# KatzMelinger

280 Madison Avenue, Suite 600
New York, New York 10016
www.katzmelinger.com

| | |
|---|---|
| Nicole Grunfeld<br>Katz Melinger PLLC | t: 212.460.0047<br>f: 212.428.6811<br>ndgrunfeld@katzmelinger.com |

December 29, 2020

**Via ECF**
Hon. Mary Kay Vyskocil
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 14A
New York, New York 10007

      Re:   *Huerta v. Aura Wellness Spa Corp., et al.*
             <u>Civil Action No. 19-cv-11095</u>

Your Honor:

      We are attorneys for the parties in this matter and write jointly to seek approval of the parties' agreement to settle Plaintiff's claims, which include claims for overtime violations under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law ("NYLL"); failure to pay spread of hours pay under the NYLL; failure to timely pay wages under the NYLL; unlawful deductions from wages under the NYLL; and failure to provide payroll notices and wage statements under the NYLL. The parties write to respectfully request that the Court approve the parties' settlement agreement, a copy of which is attached hereto as **Exhibit A**, and allow the parties to discontinue the matter with prejudice pursuant to Fed. R. Civ. P. 41.

      As explained in further detail below, the parties respectfully aver that the proposed settlement agreement is fair, reasonable, and equitable.

### Background

      This action was commenced on December 3, 2019 by plaintiff Emiliano Huerta ("Plaintiff") against defendants, Aura Wellness Spa Corp. ("Aura"), Rockford Chun, and "Jane Doe" [Legal Name Unknown] a/k/a Helen ("Helen")(collectively, "Defendants"), for the claims described above.

      Plaintiff alleges that he worked for Defendants as a locker room maintenance employee from in or around December 2008 until on or around July 22, 2019. As a locker room maintenance employee, Plaintiff alleges that he was a non-exempt employee under the FLSA and NYLL, and

was thus entitled to overtime wages for all hours worked over forty (40) per week, as well as spread of hours pay for every day in which his shift exceeded ten (10) hours.

Plaintiff alleges that, throughout his employment with Defendants, he regularly worked five (5) days per week, for a total of approximately fifty-six (56) hours per week, and that his shifts exceeded more than ten (10) hours per day on three (3) days per week. Plaintiff further alleges that, throughout his employment, he was not afforded a daily meal or rest break during his shifts, and ate any meals while working. Plaintiff alleges that Defendants paid him a fixed hourly rate for all hours worked, including those over forty (40) per week, as follows: $8.00 per hour from the start of his employment until in or around December 2008; $9.00 per hour from in or around January 2009 until in or around December 2014; $11.00 per hour from in or around January 2015 until in or around December 2016; $13.00 per hour from in or around January 2017 until in or around December 2018; and $15.00 per hour from in or around January 2019 until the end of his employment. Plaintiff alleges that he was not paid any additional wages whenever his shifts exceeded more than ten (10) hours per day.

Plaintiff further alleges that, beginning in or around January 2019 and continuing until the end of his employment, Defendants deducted from Plaintiff's paycheck a thirty (30) minute meal break for each shift lasting up to eight (8) hours, and a sixty (60) minute meal break for each shift that was longer than eight (8) hours, despite the fact that Plaintiff continued not taking any breaks during this time period.

Plaintiff alleges that he is owed approximately $27,840.00 in unpaid overtime wages; $9,261.75 in unpaid spread of hours wages; and $1,522.50 in unlawfully deducted wages, for a total of $38,624.25, in addition to liquidated damages and wage and payroll notice penalties.

Defendants argue that Plaintiff worked far fewer hours than alleged. Defendants provided Plaintiff's counsel with certain payroll and timekeeping documents which purportedly demonstrate that Plaintiff typically worked fewer hours than alleged in Plaintiff's complaint.

Counsel for the parties have engaged in good faith, arms' length bargaining in an effort to resolve this matter. While Plaintiff and Defendants continue to express opposing views on the likely outcome of this matter, they understand that the complex factual issues in this matter would likely require a trial, and that each of them would expend significant time and costs to prepare for trial. While Plaintiff and Defendants have agreed to a settlement, there remains significant disagreement over the amount of alleged overtime hours worked by Plaintiff, the amount and manner in which Plaintiff was compensated, and the authenticity of certain documents. In addition, a principal issue discussed between counsel for the parties was Defendants' limited financial resources and their inability to pay a substantial settlement amount and/or satisfy a large judgment. As Defendants operate a spa, their business has been greatly impacted by the Covid-19 pandemic. Defendants provided Plaintiff's counsel with certain financial statements reflecting Defendants' debts, which would purportedly make it difficult for Defendants to pay Plaintiff a large settlement amount and/or satisfy a large judgment.

With such uncertainty on both sides, the risk to Defendants of a substantial judgment against them, the risk to Plaintiff of failing to prevail on all of his claims, and the risk that Plaintiff

would be unable to collect on a judgment against Defendants, the amount agreed upon by Plaintiff and Defendants represents a fair and reasonable settlement at such an early stage of the litigation.

### The Proposed Settlement Should Be Approved

1. <u>The settlement amount is fair and reasonable</u>

The parties' proposed settlement agreement warrants approval as it is fair, reasonable, and equitable. Indeed, the agreement reflects a reasonable compromise of Plaintiff's FLSA and NYLL claims rather than a mere waiver of statutory rights brought about by Defendants' overreaching. Here, there is no doubt that the settlement did not come about because of "overreaching" by Defendants. To the contrary, Plaintiff is represented by competent counsel and the settlement amount, $17,000.00, results in a recovery to Plaintiff, after expenses and proposed attorneys' fees, of $11,002.67. This sum is fair and reasonable given the amount of compensatory damages Plaintiff was seeking in this matter compared with the risk that Plaintiff would not prevail on all of his claims after a trial and the significant risk that Defendants would be unable to satisfy a substantial judgment.

2. <u>The settlement agreement was the result of arm's length negotiations by the parties</u>

The proposed settlement is also the product of negotiation between represented parties following extensive settlement discussions. Plaintiff and Defendants hold opposing views on the merit and value of Plaintiff's claims; however, the arm's length bargaining between the represented parties, along with the information exchanged during discovery and shared during settlement negotiations, weighs in favor of finding the settlement reasonable. Moreover, nothing in the record before the Court indicates that the proposed settlement has been achieved through fraudulent or collusive conduct. Through discovery and candid discussions between counsel, the parties can assess the strengths and weaknesses of the asserted claims and their respective positions. *See, e.g.*, *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) ("In considering whether a settlement is fair and reasonable, the principal question is whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching'") (citation and internal quotation marks omitted); *Aponte v. Comprehensive Health Mgmt., Inc.,* No. 10 CIV. 4825 JLC, 2013 WL 1364147, at *4 (S.D.N.Y. Apr. 2, 2013)(courts typically "regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement") (citation and internal quotation marks omitted). Furthermore, since Plaintiff is no longer employed by Defendants, coercion is unlikely. *See, e.g.*, *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *Cisneros v. Schnipper Rest. LLC*, No. 13 CIV. 6266 JMF, 2014 WL 67235, at *1 (S.D.N.Y. Jan. 8, 2014) ("Although the FLSA places strict limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver, these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here") (citation and internal quotation marks omitted).

Additionally, after weighing the factors, the settlement should be allowed to proceed, as: (i) Plaintiff's alleged injuries will not recur as Plaintiff is no longer employed by Defendants; and (ii) continuing to develop the record will only serve to enlarge costs on both sides and will not serve any useful purpose. *Wolinsky v. Scholastic Inc*., 900 F. Supp. 2d at 335-36.

3. Plaintiffs' counsel's fees are reasonable

Lastly, the parties agree that the settlement amount is a reasonable compromise of all parties' positions, and the proposed amount of attorneys' fees is also fair and reasonable as Plaintiff's counsel's own compensation does not adversely affect the extent of the relief obtained by counsel on behalf of Plaintiff. *See Wolinsky,* 900 F. Supp. 2d at 336-37; *Cisek v Natl. Surface Cleaning, Inc.*, 954 F. Supp. 110, 111 (S.D.N.Y. 1997) (finding that the sum sought by plaintiffs' counsel was reasonable, the settlement was untainted by conflict of interest and there was "no reason to conclude that plaintiffs' counsel benefited at the expense of their clients"). Thus, the settlement does not favor Plaintiff's counsel over Plaintiff.

Under the proposed agreement, Plaintiff's counsel would recover $496.00 as reimbursement for costs and expenses[1] and $5,501.33 in fees. Under Plaintiff's contingency fee agreement, Plaintiff's counsel is entitled to recover, out of Plaintiff's settlement amount, fees totaling one-third of any amounts recovered on behalf of Plaintiff after reimbursement of costs and expenses. This fee should be approved, as "[a]n award of one third of the fund is consistent with what reasonable, paying clients pay in contingency employment cases." *Flores v. Anjost Corp.*, No. 11 CIV. 1531 AT, 2014 WL 321831, at *8 (S.D.N.Y. Jan. 29, 2014); s*ee also Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 CV 3234 LB, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) ("Pursuant to plaintiff's retainer agreement with counsel, the fee is one-third of the settlement amount, plus costs. This fee arrangement is routinely approved by courts in this Circuit."). The proposed fee award of one-third should also be approved because it was consensual and agreed to by Plaintiff. *See Mireku v. Red Vision Sys., Inc.,* No. 11 CIV. 9671 RA JLC, 2013 WL 6335978, at *3 (S.D.N.Y. Dec. 6, 2013) (amount of fees "is of little consequence when fees are consensual") (citation and internal quotation marks omitted).

As indicated by Plaintiff's counsel's time records, attached hereto as **Exhibit B**, Plaintiff's counsel has spent a total of 19.40 hours on this matter as follows: Nicola Ciliotta, 16.00 hours; and Nicole Grunfeld, 3.40 hours. Plaintiff's counsel's hourly rates - $285.00 and $435.00, respectively – are reasonable based on their experience and are in line with the rates charged by attorneys in this district. *See Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 437 (S.D.N.Y. 2014) ("Courts in this District have determined in recent cases that a fee ranging from $250 to $450 is appropriate for experienced litigators in wage-and-hour cases.") (internal quotation marks and citation omitted).

Mr. Ciliotta earned his B.A. from Vanderbilt University in 2015 and his J.D. from Penn State Law School in 2018; he was admitted to practice in New York in 2019. Since joining Katz Melinger PLLC in 2018, Mr. Ciliotta has focused his practice on all aspects of employment litigation, with a particular focus on wage and hour cases.

Ms. Grunfeld has been the senior associate at Katz Melinger PLLC for more than seven years. She earned her B.A. in 1998 from Yale University, and her J.D. in 2004 from New York University School of Law. Ms. Grunfeld was admitted to practice in the courts of New York in 2005, is a Board member of the New York chapter of the National Employment Lawyers'

---

[1] Plaintiffs' costs and expenses are as follows: $400.00 for initial filing fee; and $96.00 in process server fees.

Association, and has focused primarily on plaintiffs' employment matters for more than twelve years.

The $5,501.33 fee sought by Plaintiff's counsel is less than Plaintiff's counsel's "lodestar" amount of $6,039.00 and should accordingly be found reasonable. . *See e.g. Hernandez v. Merrill Lynch & Co.,* No. 11 CIV. 8472 KBF DCF, 2013 WL 1209563, at *9 (S.D.N.Y. Mar. 21, 2013) (approving a 3.8 multiplier and collecting cases); *Chamoro v. 293 3rd Café Inc.*, No. 16 CIV. 339 (PAE), 2016 WL 5719799, at *5 (S.D.N.Y. Sept. 30, 2016) (approving a 1.38 multiplier of the lodestar based on "(1) the quality of the representation, (2) the magnitude of the settlement award, (3) the time and effort plaintiff's counsel spent litigating this action and securing settlement, and (4) the considerable risk involved with taking this case on a contingency fee basis"); *Steinberg v. Nationwide Mut. Ins. Co.*, 612 F.Supp.2d 219, 224 (E.D.N.Y.2009) (approving 1.5 multiplier). This is particularly true where, as here, Plaintiffs voluntarily agreed, both at the time of settlement and at their initial engagement of counsel, to a reasonable one-third fee arrangement. *Rangel*, 2013 WL, at *1 ("While attorney's fees in FLSA settlement agreements are subject to court approval for reasonableness, there is a greater range of reasonableness where, as here, the Parties have settled on the fee through negotiation") (citations and internal quotation marks omitted).. As set forth herein, Plaintiff's counsel negotiated a favorable settlement for Plaintiff, in which Plaintiff recovered a substantial portion of his alleged unpaid wages and will avoid the significant risk of either receiving an unfavorable outcome in this matter or, if Plaintiff ultimately prevailed in his claims, attempting to enforce a judgment against Defendants. Furthermore, the agreement provides that Plaintiff will receive the entire settlement amount in one lump sum payment shortly after the Court approves the terms of the settlement agreement, which is highly favorable for Plaintiff.

Accordingly, the parties respectfully request judicial approval of the parties' proposed settlement agreement, and further request permission to submit a stipulation of dismissal with prejudice consistent with the requirements of Fed. R. Civ. P. 41(1)(a)(ii).

Respectfully submitted,

*/s/ Nicole Grunfeld*
Nicole Grunfeld
Katz Melinger PLLC
280 Madison Avenue, Suite 600
New York, New York 10016
T: (212) 460-0047
ndgrunfeld@katzmelinger.com
*Attorneys for Plaintiff*

*/s/ Michael Chong*
Michael K. Chong
MKC Law Group LLC
2 Executive Drive, Suite 240
Fort Lee, New Jersey 07024
T: 201-947-5200
mkc@mkclawgroup.com
*Attorneys for Defendants*